IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **RICHARD ISAAC WYRICK, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:16cv136 |
| | ) | |
| **NANCY A. BERRYHILL,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Richard Isaac Wyrick, Jr. ("Wyrick") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Wyrick alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) evaluate his mental impairments under SSR96-8P; (2) weigh the opinion of his treating physician; (3) perform a function-by-function analysis; and (4) evaluate his credibility. In the alternative, Wyrick asks the court to remand based on new evidence, specifically Wyrick's subsequent award of benefits, where the Commissioner determined he met Listing 12.04 and was disabled as of April 1, 2016.

I agree that the ALJ failed to properly evaluate Wyrick's mental impairments under SSR96-8P and conclude that the ALJ failed to properly account for Wyrick's moderate impairment in concentration, persistence, and pace, and thus the decision is not supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** the Commissioner's Motion

for Summary Judgment (Dkt. No. 16) and **REVERSING** and **REMANDING** this matter for further administrative consideration consistent with this opinion.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Wyrick failed to demonstrate that he was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the court remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC.

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

Mascio, 780 F.3d at 636, Monroe, 826 F.3d. at 189. Similarly, I find that remand is appropriate here because the ALJ's opinion leaves the court to guess at how he reached his conclusions regarding Wyrick's RFC.

## **CLAIM HISTORY**

Wyrick filed for DIB on September 27, 2012 and for SSI on June 25, 2013, claiming in both applications that his disability began February 15, 2007, due to degenerative disc disease in his back, neck, and shoulder, bipolar disorder, and psychotic episodes.[2] R. 13, 222. The state agency denied Wyrick's applications at the initial and reconsideration levels of administrative review. R. 61–75, 77–91, 92–106. On September 10, 2014, ALJ Steven A. De Monbreum held a hearing to consider Wyrick's claims for DIB and SSI. R. 30–60. Counsel represented Wyrick at the hearing, which included testimony from vocational expert John F. Newman.

On November 17, 2014, the ALJ entered his decision analyzing Wyrick's claims under the familiar five-step process[3] and denying his claim for benefits. R. 13–24. The ALJ found that Wyrick was insured at the time of the alleged disability onset and that he suffered from the following severe impairments: history of headaches, right wrist injury status post 2009 surgery, right rotator cuff injury status post 2007 surgery, degenerative disc disease of the lumbar spine with lumbar radiculopathy, degenerative disc disease of the cervical spine, degenerative joint

---

[2] Wyrick's date last insured was December 31, 2012, thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 218; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

disease, myofascial pain disorder, fibromyalgia, affective disorder with history of bipolar disorder, somatoform disorder, personality disorder, and substance abuse disorder (marijuana). R. 16. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 16–18. The ALJ concluded that Wyrick retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 18. Specifically, the ALJ found that Wyrick can never reach overhead with the right upper extremity, but that he is capable of frequent handling, fingering, feeling, pushing, and pulling with this extremity. Id. Wyrick may never crawl, climb ladders, ropes or scaffolds, and may only occasionally kneel, crouch, stoop, bend, and climb ramps and stairs. Id. Wyrick must avoid concentrated exposure to vibration or hazards. Id. Further, he can only perform simple, easy to learn, repetitive, unskilled work activity, and should not interact with the public, but can have occasional interaction with coworkers and supervisors. Finally, Wyrick needs a static work environment with few changes in work routines and settings. Id.

The ALJ determined that Wyrick was unable to perform his past relevant work as a cable installer, industrial maintenance technician, or painter/remodeler. R. 22–23. However, the ALJ found that he could perform jobs that exist in significant numbers in the national economy, such as assembler and inspector/tester/sorter. R. 24. Thus, the ALJ concluded that Wyrick was not disabled. R. 24. Wyrick appealed the ALJ's decision and the Appeals Council denied his request for review on February 5, 2016. R. 1–3.

## ANALYSIS

### A. Mental Impairments

In January 2010, Wyrick presented to Piedmont Community Services for a psychological

4

evaluation. Nicholas Zeltvay, D.O. noted Wyrick had previously been diagnosed with bipolar disorder and assessed a GAF score of 45.[4] R. 530–32. Dr. Zeltvay recorded that Wyrick appeared depressed and with neglected grooming, but was cognitively oriented on all spheres. Id. Wyrick presented for multiple follow-up appointments at Piedmont Community Services in 2010 and 2011. R. 533, 535, 537, 537, 544, 546, 548.

In August 2012, Wyrick was admitted to Moses Cone Behavior Unit for a manic episode with psychotic features.[5] R. 395–411, 417. Wyrick had been "found wandering in a stranger's yard in his underwear with [his] 14 month old baby [who he] states has been giving him advice and guiding him." R. 406. He was having "loose associations [and] delusions" including feeling that his wife and her family were plotting against him. Id. On discharge, Wyrick's diagnoses were bipolar disorder without psychotic features, under remission, chronic marijuana dependence, and chronic mental health issues. R. 417–18. Wyrick had multiple follow-up appointments with Piedmont Community Services, and Jeremy A. Llavore, M.D. R. 551, 464. In September 2012, Dr. Llavore noted that Wyrick is "doing better" now that he is on his medications. R. 464. In October 2012, during a follow up appointment at Piedmont Community Services, the provider noted that Wyrick was tolerating his medications, but refusing antipsychotics, and continued with "some vague paranoid persecutory delusional" symptoms. R. 553. In January and July, 2013, the provider indicated that Wyrick "denied any significant depressive symptoms" and his concentration and attention were fair, but his insight and judgment

---

[4] The ALJ accorded "limited weight to the GAF scores contained in the records from Piedmont Community Services," indicating the scores were not supported by the objective clinical findings, or "the fact that [Wyrick] has not pursued mental health treatment since July 2013 and seems to be functioning relatively well . . . ." R. 22.

[5] Wyrick was admitted to Moses Cone Behavior Unit on August 26, 2012 and discharged on August 29, 2012.

5

were fair to poor. R. 555–56, 573. In both January and July 2013, Wyrick's chief complaint was "infrequent mood instability on a weekly basis" generally prompted by social stress. R. 555, 572.

In August 2013, Jeffrey B. Luckett, Ph.D. completed a consultative psychology report for the Virginia Department of Rehabilitative Services, including an intellectual assessment, clinical interview, and mental status examination. R. 585–92. Dr. Luckett reported that Wyrick had severe depression, however, the examiner noted that he "did not appear to be in any significant distress or turmoil." R. 589. Dr. Luckett determined that, from a psychological standpoint" Wyrick was "quite stable" and "would be able to work an 8 hour day and a 40 hour week." R. 592.

In April 2013, state agency psychologist Sandra Francis, Psy.D. reviewed the records and indicated that Wyrick was moderately limited in his ability to understand and remember detailed instructions, maintain attention and concentration, and work in coordination with or proximity to others. R. 71–72. Regarding concentration, persistence, and pace, Dr. Francis wrote, "[Wyrick's] paranoia would likely cause some trouble with concentration however he should be able to concentrate for at least two hour intervals." R. 72. In August 2013, state agency psychologist Howard S. Leizer reviewed Wyrick's records on reconsideration and also determined that "his paranoia would cause trouble with concentration, [however] he would be able to concentrate for at least two hour periods without difficulties." R. 88. In the opinion, the ALJ gave "great weight" to Dr. Leizer's opinion. R. 22.[6]

---

[6] Regarding his physical impairments, Wyrick has a history of back, neck, and shoulder pain following a motor vehicle accident in 2006 and a fall while at work in 2007. In fact, his medical records indicate that Wyrick's back pain dates back to the early 1990s. R. 587, 617. In April 2007 he had arthroscopic surgery to repair a partial-thickness rotator cuff tear and in August 2009 Wyrick underwent surgery on his right wrist, including repairing a central tear of his triangular fibrocartilage complex and debridement. R. 287, 847. He consistently complained of back, neck, and shoulder pain to his medical providers throughout the treatment period, but, except for the surgery, his treatment was relatively conservative, including injections and chiropractic care. R. 290, 292, 309, 366, 434, 437, 442, 450, 460, 462, 466, 476, 509, 518, 598, 658, 562-65, 617, 618, 677, 686, 700, 707, 794, 806, 821, 829, 869, 870. In January 2014, Wyrick began treating with Chheany Ung, M.D., a pain management specialist. R. 618. Dr.

6

### B. Mental Impairments under SSR 96–8P

Wyrick argues that the ALJ failed to properly assess his mental impairments as required by SSR 96-8P.[7] See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). Wyrick asserts that the ALJ failed to address his moderate limitations in concentration, persistence, or pace in assessing his RFC, and further failed to provide proper hypothetical questions to the vocational expert that addressed these limitations. The Commissioner counters that the ALJ's evaluation and discussion of the medical evidence was sufficient to explain why [Wyrick's] RFC did not "warrant limitations beyond those included in the ALJ's decision." D.'s Br. at 19, Dkt. No. 17.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 U.S. Dist. LEXIS 153878, at *23, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)

---

Ung assessed chronic pain syndrome, lumbar radiculitis, and lumbar spondylosis without myelopathy. R. 620. Wyrick was referred to a rheumatologist and in March 2014, he was assessed with fibromyalgia. R. 712. Because I recommend remand on other grounds, I do not address Wyrick's allegations regarding Dr. Ung's opinion or the ALJ's credibility analysis.

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

7

(emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

When considering whether Wyrick's impairments met or equaled a listing, the ALJ determined that Wyrick had moderate restrictions in activities of daily living, social functioning, and with concentration, persistence, and pace, and that Wyrick has experienced one to two episodes of decompensation, each of extended duration. R. 17. In step four of his analysis, the ALJ discussed Wyrick's mental health symptoms and treatment, including his diagnoses of affective, personality, pain, bipolar, and substance use disorders, his in-patient hospitalization in 2012, and the opinions of Dr. Luckett, who performed a consultative psychological examination, and the state agency psychologists. R. 20–22. The ALJ emphasized that "there is no evidence that [Wyrick] has sought treatment form a mental health professional since July 2013." R. 21. The ALJ summarizes the progress note from Wyrick's last visit in July 2013 as complaints of "'infrequent mood instability' that was generally prompted by 'significant social stress with his ex.'" R. 20. However, the note actually reads "infrequent mood instability *on a weekly basis* . . . ." Id. (emphasis added).

The ALJ also noted Dr. Luckett's opinion that Wyrick was doing "quite well at this time in regards to emotional stability" and could work an eight hour day and a 40 hour week. R. 20. The ALJ characterized the clinical findings of Dr. Luckett as "rather innocuous" and determined that the record does not "contain any objective evidence of record to support a conclusion that mental impairments cause more than . . . moderate difficulties in maintaining concentration, persistence, or pace." R. 22. The ALJ wrote:

8

> Thus, after consideration of all evidence of record, and in the absence of a more restrictive medical assessment by a treating or examining physician or mental health professional, the undersigned accords great weight to the well-supported opinion of the reviewing psychologist at the reconsideration level and finds that [Wyrick] can only perform simple, easy to learn, repetitive, unskilled work activity.

R. 22. In his hypothetical question to the vocational expert, in addition to limitations imposed for physical impairments, the ALJ stated:

> Due to mental impairments this individual is limited to simple, easy to learn, repetitive routine jobs tasks consistent with unskilled work. This individual should have no interaction with the public and only occasional interaction with coworkers and supervisors, and needs a static work environment with few changes in work routines and settings.

R. 56.

Thus, the ALJ imposed "simple, easy to learn, repetitive, unskilled work activity" in response to Wyrick's moderate limitations in maintaining concentration, persistence, and pace. However, in Mascio v. Colvin, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d 632, 638 (4th Cir. 2015) (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that without such an explanation, remand was necessary. Id. Thus, while Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, it does underscore the ALJ's duty to adequately

9

review the evidence and explain the decision. This is especially so where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. See also Monroe v. Colvin, 826 F.3d 176, (4th Cir. 2016) (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically apply the law to the record).

     Here, the ALJ did not explain why a limitation to simple, easy, repetitive, unskilled tasks sufficiently accommodates Wyrick's moderate difficulty with concentration, persistence and pace. Indeed, the state agency psychologist at the reconsideration level, Dr. Leizer, to whom the ALJ gives "great weight," specifically found that Wyrick's paranoia "would cause trouble with concentration" and questioned Wyrick's ability to concentrate beyond two hour periods.[8] R. 88. However, the ALJ did not account for Wyrick's diminished ability to stay on task, nor did he explain why he concluded that, despite his moderate limitations in concentration, persistence, or pace Wyrick is capable of performing the basic demands of unskilled work without accommodation.[9] Indeed, the ALJ did not discuss anywhere in his opinion Dr. Leizer's finding that Wyrick's paranoia would cause trouble with concentration. See Greer v. Colvin, No. 1:14CV00143, 2016 WL 1367745, at *8 (M.D.N.C. Apr. 6, 2016) (unpublished) (finding that giving significant weight to the state agency consultant's opinion that "plaintiff was capable of performing simple tasks" did not adequately explain ALJ's failure to account for plaintiff's moderate difficulties in concentration, persistence and pace because that same consultant noted that plaintiff "may have some difficulty maintaining attention and concentration") (internal citations omitted); see also Salmon v. Colvin, No. 1:12CV1209, 2015 WL 1526020, at *2

---

[8] Dr. Leizer wrote: "Claimant has difficulties with stress related tasks. His paranoia would cause trouble with concentration, however he would be able to concentrate for at least two hour periods without difficulties." R. 88.

[9] For example, the ALJ did not indicate in the RFC that Wyrick required breaks every two hours.

(M.D.N.C. Apr. 2, 2015); but see Wilkerson v. Colvin, No. 1:15CV00944, 2016 WL 3264311, at *5 (M.D.N.C. June 14, 2016) (finding the ALJ's reliance on the state agency consultant's determination was sufficient because the consultant concluded "that, despite moderate limitation in [concentration, persistence or pace], Plaintiff could maintain attention concentration for at least two hours at a time as required for the performance of simple tasks") (unpublished) (internal citations and quotations omitted). Thus, as in Mascio, this court is "left to guess about how the ALJ arrived at his conclusions." 780 F.3d at 637.

In short, the ALJ failure to explain *why* Wyrick's moderate concentration deficits did not translate into additional limitations in the RFC constitutes reversible error and requires remand. See id.; Nichols v. Colvin, No. 7:15-cv-44, 2016 WL 4529780, at *3–*4 (W.D. Va. Aug. 3, 2016); White v. Colvin, No. 4:14-CV-00018, 2015 WL 1958885, at *12 (W.D. Va. May 1, 2015). The ALJ must sufficiently articulate his findings such that the district court can undertake a meaningful review. Monroe v. Colvin, 826 F.3d at 189 (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)) ("a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence that ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence); see also Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017) (emphasizing the importance of "[r]eaching a decision in a well-reasoned and documented fashion" and admonishing ALJs to "[s]how your work."). Thus, this matter should be remanded with instructions to the Commissioner to properly account for Wyrick's moderate limitation with concentration, persistence and pace.

Because I find that remand is warranted based on the ALJ's failure to properly account for Wyrick's moderate impairment in concentration, persistence, and pace, Wyrick's additional

11

allegations of error will not be addressed. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). However, upon remand, the Commissioner should take into consideration Wyrick's remaining allegations of error.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16), **GRANTING in part** Wyrick's motion for summary judgment (Dkt. No. 14), and **REVERSING** and **REMANDING** this case to the Commissioner under sentence four of 42 USC § 405(g).

The Clerk is directed to transmit the record in this case Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered:  June 28, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

12